IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANNIEL W. B., JR.,[1]  )
                                   )
      Plaintiff,  )
                                   )
vs.  ) Civil No. 18-cv-1481-DGW[2]
                                   )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
                                   )
      Defendant.  )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for disability benefits in November 2013, alleging disability as of October 15, 2010.[3] After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on October 19, 2015. (Tr. 12-26). The Appeals Council denied review, and the decision of the ALJ became

---

[1] In keeping with the Court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 22, 29.

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

the final agency decision. (Tr. 1). Administrative remedies were exhausted and a timely complaint was filed in the United States District Court for the Northern District of Illinois.

In August 2017, United States Magistrate Judge Maria Valdez reversed the ruling of the ALJ and remanded to the Commissioner for rehearing and reconsideration of the evidence. After holding another evidentiary hearing, the ALJ denied the application again on February 28, 2018. (Tr. 672-688). In August 2018, United States Magistrate Judge M. David Weisman granted defendant's motion to transfer the case to this Court. Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ did not adhere to SSR 16-3p when he failed to properly evaluate claimant's subjective symptom allegations.

2. The ALJ did not adhere to 20 C.F.R. § 416.927 when he failed to accord adequate weight to the opinions of the claimant's physicians.

3. The ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity (RFC) finding.

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of degenerative disc disease status post fusion in August 2014, obesity, dysthymic disorder, mood disorder, generalized anxiety disorder, personality disorder, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and attention-deficit hyperactivity disorder (ADHD). He further determined that these impairments do not meet or equal a listed impairment.

3

The ALJ found that plaintiff had the RFC to do light work, which requires standing or walking for 6 hours in an 8 hour workday, with the following limitations:

> . . . can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolding. He can occasionally stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to hazards such as unprotected heights. He can understand, remember, and carry out short, simple instructions for simple tasks in a work setting that does not require interaction with the general public.

The ALJ found that plaintiff had moderate limitations in concentration, persistence, or maintaining pace. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff was not able to do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1974 and was 36 years old on the alleged onset date. (Tr. 299). He previously worked as an auto detailer and assembler in production. (Tr. 60). Plaintiff submitted a function report in December 2013, complaining of severe anxiety, depression, obsessive thought, compulsive behaviors, inattentiveness, impulsivity, and hyperactivity. He also noted his inability to establish normal social ties and behavior. Plaintiff stated that attempting to

interact with the public caused him to experience severe anxiety, shortness of breath, tightening of the chest, panic, fear, and sweating. To avoid these symptoms, plaintiff isolated himself socially, even asking his roommate to shop for his groceries. (Tr. 249-250, 252).

2. **Evidentiary Hearings**

Plaintiff testified that he was fired from his last job for missing work due to his mental problems and back pain. (Tr. 42). Plaintiff claimed that he had mental problems all his life, some of it stemming from an abusive stepfather. (Tr. 45). Plaintiff reported taking Xanax for anxiety and Wellbutrin for depression. (Tr. 46). Plaintiff stated that anxiety and nervousness, along with their effects on social interactions, affected his ability to work. He stated that he worked for years with the problems because he had to work, but his back problems rendered him unable to continue employment. (Tr. 47).

Plaintiff reported not doing any housework, cooking, or grocery shopping, leaving those responsibilities to his cohabitant. Plaintiff stated that it was hard to grocery shop because he did not like large crowds. He estimated that he last went grocery shopping six or seven years ago. (Tr. 47-48). Plaintiff also opined that he was sensitive to loud noises due to post-traumatic stress disorder brought on by abuse from his stepfather. (Tr. 54).

In his second hearing, plaintiff reported having good days and bad days related to his psychological problems. Plaintiff observed that good days were a rare occurrence. (Tr. 703-704). He additionally stated that he could not concentrate 80 percent of the time. He also reported sleeping a lot from his

medication and having increased depression.  (Tr. 705).

A VE also testified at the first hearing.  The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment.  The VE identified three jobs that could be done by a person with plaintiff's RFC: cleaner, housekeeping (DOT 323.687-014), routing clerk (DOT 222.687-022), and folding machine operator (DOT 208.685-014).  The VE testified to the number of each of those jobs in the national economy.  (Tr. 61).  Plaintiff's counsel asked the VE that if the hypothetical person were off task for an unscheduled hour per day, would it preclude him from working.  The VE testified that there would be no jobs in the national economy using that hypothetical.  (Tr. 64).

### 3. Medical Records

Plaintiff saw his primary care physician, Dr. Gary A. Tennison, from 2013 to at least 2017.  (Tr. 380, 919).  In 2013, Dr. Tennison stated that plaintiff complained that he was depressed, irritable, anxious, socially isolative; and experienced shortness of breath and tightening in his chest.  Plaintiff also stated that he previously attempted suicide several years ago and suffered from alcoholism.  Dr. Tennison prescribed Paxil.  (Tr. 377, 378-380).  In 2014, Dr. Tennison noted that plaintiff complained of depression, but quit taking his anti-depressants due to their side effects.  (Tr. 600).  He stated that plaintiff's daughter passed away at 6 months old, and plaintiff complained of lack of sleep, lack of appetite, mood swings, irritability, chest tightness, shortness of breath, shakiness, and thoughts of suicide.  Dr. Tennison prescribed Xanax and restarted higher dose Risperdal.  (Tr. 466-468).  In 2015, Dr. Tennison observed that

plaintiff "continues to have the shakes, nervousness, and anxiety, [and] would like to talk about possible increase" in anxiety medications. (Tr. 597). In late 2015 and early 2016, Dr. Tennison stated that plaintiff was doing well taking Xanax for his anxiety. (Tr. 946-947). Later in 2016, Dr. Tennison reported that plaintiff was again suffering from severe depression with suicidal thoughts and symptoms of anxiety despite continuing to take Xanax. (Tr. 934).

Plaintiff saw therapist Sharon Helregel in 2013 and 2014 at the Jasper County Health Department. Ms. Helregel diagnosed plaintiff with mood disorder, PTSD, OCD, and ADHD. (Tr. 362). She stated throughout her notes that plaintiff's mood was "anxious," "depressed, anxious," "depressed and very anxious," and "depressed, anxious, tearful." (Tr. 653-666).

In her medical source statement, Ms. Helregel rated plaintiff poor in ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work with or near others without being distracted by them; make simple work-related decisions; complete a normal workday or work week; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. She also rated plaintiff fair in ability to remember locations and work-like procedures; understand and remember short, simple instructions; carry out short, simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; and interact appropriately with the public. She additionally opined that he had difficulty with sustained attention and

concentration; following through with tasks; and completion of said tasks due to inattentiveness, impulsivity, and high anxiety. She stated that those same symptoms further caused him great difficulty when trying to make simple decisions. (Tr. 440-441).

Plaintiff also saw psychiatrist Dr. Linda Hungerford, who oversaw his treatment at the Jasper County Health Department under Ms. Helregel. (Tr. 361-369). Dr. Hungerford also completed a medical source statement, psychiatric evaluation, and medication check in 2014. In her medical source statement, Dr. Hungerford rated plaintiff poor in ability to understand and remember detailed instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; work with or near others without being distracted by them; complete a normal workday or workweek; perform at a consistent pace; and respond appropriately to changes in the work setting. She also rated plaintiff fair in ability to understand and remember short, simple instructions; carry out short, simple instructions; maintain attention and concentration for extended periods; and sustain an ordinary routine without special supervision. She also stated that plaintiff's impairment "would affect his compression [sic], retention, interaction between supervisors, co-workers and himself, being able to carry out instructions therefore affecting his ability to perform." (Tr. 437-439). She opined in her progress note for plaintiff that he felt his mood was more stable, but she observed that he also was more anxious. She additionally noted he had a fine tremor in his hands. (Tr. 652).

Later in 2014, Jerry Boyd, Ph.D., performed a consultative psychological

exam. During the exam, plaintiff acknowledged anxiety and agitation, describing his symptoms as "[s]hortness of breath, tightness of chest, worrisome and I just go off by myself and lay in bed and curl the blankets over me and shakes [sic] . . . ." He concluded that plaintiff retained the capacity to "understand and follow simple, repetitive instructions" but would struggle with multitasking. Dr. Boyd also concluded that his anxiety would interfere with his concentration and persistence; and he had limited coping skills with a low tolerance for even moderate stresses. (Tr. 570-571).

4. **State Agency Consultants' Mental RFC Assessments**

In January 2014, acting as a state agency consultant, M. W. DiFonso, Psy.D., assessed plaintiff's mental RFC based on a review of the file contents. Dr. DiFonso answered "yes" to the question "[d]oes the individual have sustained concentration and persistence limitations?" She rated plaintiff as moderately limited in ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to interact appropriately with the general public; and ability to accept instructions and respond appropriately to criticism from supervisors. She rated the plaintiff as not significantly limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 77-78).

In October 2014, acting as a state agency consultant, Howard Tin, Psy.D., assessed plaintiff's mental RFC based on a review of the file contents. Dr. Tin answered "yes" to the question "[d]oes the individual have sustained concentration

and persistence limitations?" He rated plaintiff as "moderately limited" in ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to work in coordination with or in proximity to others without being distracted by them. He rated the plaintiff as "not significantly limited" in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In the section entitled "MRFC-Additional Explanation," Dr. Tin wrote that plaintiff "does not handle stress nor changes in routine well" and "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." Additionally, he stated that plaintiff "has difficulty in interacting appropriately with the general public and tend [sic] to withdraw and self-isolate." Dr. Tin then stated that plaintiff "has the ability to respond appropriately to changes in work settings, being aware of normal hazards and travel in unfamiliar settings." (Tr. 109-111).

## Analysis

Plaintiff argues that the ALJ improperly weighed opinion evidence. A treating physician's opinion is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a good reason for the

rejection. *Ibid.* When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what weight the treating physician's opinion merits. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). Specifically, the ALJ must evaluate the opinion in light of (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. *Ibid.* The ALJ's decision failed to meet these requirements for rejecting the opinion of plaintiff's treating physician.

The deficiency here is that the ALJ's reasoning for rejecting Dr. Hungerford's opinion is flimsy at best and based on distorted information. In rejecting Dr. Hungerford's medical source statement, the ALJ stated that Dr. Hungerford "saw the claimant twice" and noted that her treatment of plaintiff was "very minimal." (Tr. 685). However, taking the record as a whole, it appears that Dr. Hungerford oversaw the treatment of plaintiff with Ms. Helregel, who worked as a therapist at the Jasper County Health Department with Dr. Hungerford. This contention is bolstered by a treatment plan that both individuals signed that is, curiously, nowhere to be found in the ALJ's decision.

Furthermore, the ALJ's determination that the disabling limitations noted by Dr. Hungerford conflicted with objective evidence showing the plaintiff's psychological symptoms improving and stabilizing with medication and

11

psychotherapy is flawed. "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). In order to discount Dr. Hungerford's opinion based on plaintiff's response to treatment, the ALJ must connect how his improvement restored plaintiff's ability to work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott*, 647 F.3d at 740. The ALJ failed to do that here.

Moreover, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Especially in cases involving mental illness, the ALJ must evaluate the whole record, as symptoms of mental illness can frequently fluctuate. *Scott*, 647 F.3d at 739; *see also Punzio v. Astrue*, 630 F.3d 704, 710-711 (7th Cir. 2011). "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot at any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710-711.

In his decision, the ALJ referenced progress notes from plaintiff's primary care provider, Dr. Tennison, indicating that Plaintiff's symptoms of anxiety and depression were stable, and he was doing well. (Tr. 685). However, the ALJ did not address subsequent progress notes from Dr. Tennison indicating that plaintiff

complained of depression and noting that plaintiff "continues to have the shakes, nervousness, and anxiety, [and] would like to talk about possible increase" in anxiety medications. (Tr. 597). Nor did the ALJ include a more recent note stating plaintiff had severe depression with suicidal thoughts and symptoms of anxiety despite taking Xanax. (Tr. 934).

The ALJ also gave "significant weight" to the state agency consultants' opinions in the mental RFC assessment form, but then failed to acknowledge that they both opined that plaintiff had moderate limitations in ability to understand, remember, and carry out detailed instructions. Additionally, the ALJ only briefly acknowledged their opinions regarding plaintiff's moderate limitation in ability to maintain attention and concentration for extended periods. The ALJ then seemed to twist these findings, claiming that they comported with other "mild" findings in the record, and presumably in contrast to Dr. Hungerford's findings, before settling in again to harp about the plaintiff's symptoms stabilizing. (Tr. 684). Furthermore, the ALJ did not even acknowledge the fact that one of the state agency consultants, Dr. Tin, contradicted himself in his assessment, in one place stating that plaintiff "does not handle stress nor changes in routine well" and in another place stating that plaintiff "has the ability to respond appropriately to changes in work settings. . . ."

Accordingly, the ALJ erred by not addressing contrary evidence when discounting Dr. Hungerford's conclusions, while simultaneously accepting other opinions in her place without adequate explanation. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("An ALJ cannot recite only the evidence that

supports his conclusion while ignoring contrary evidence."). Because remand is required for errors in the ALJ's weighing of the opinion evidence of Dr. Hungerford, the Court need not address plaintiff's remaining arguments. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court will point out as a final note, however, that while the ALJ concluded that the objective medical evidence indicated that plaintiff's impairments could reasonably be expected to cause his alleged symptoms, he also concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The Seventh Circuit has called this language "even worse" than "meaningless boilerplate." See *Bjornson v. Astrue*, 671 F.3d 640, 645–46 (7th Cir. 2012); see also *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003). On remand, the ALJ should be more vigilant in addressing this issue as well.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for

disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:   May 8, 2019.

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**